KUTTES v. LUKE et al.

No. 3713. Decided December 8, 1921. Rehearing Denied January 12, 1922. (203 Pac. 347.)

1. PRINCIPAL AND AGENT—EVIDENCE HELD TO SHOW FRAUD IN COLLECTING FEES FOR SUIT NOT INSTITUTED. Evidence *held* to show that a mercantile agency was guilty of fraud in collecting from plaintiff attorney's fees and costs for prosecuting a suit on plaintiff's note when no suit was instituted until after plaintiff had demanded return of the note and an accounting.

2. ACTIONS—FORMS BEING ABOLISHED, FAILURE TO ASK ACCOUNTING HELD NOT TO DEFEAT RELIEF DUE UNDER FACTS ALLEGED. In view of the constitutional provision abolished forms of action and directing that there be only one form of civil action, and that law and equity may be administered in the same action, the failure of the plaintiff to ask for an accounting in equity does not defeat his right to recover money which the facts alleged in his complaint showed was obtained from him by the fraud of defendants.[1]

Appeal from District Court, Third District, Salt Lake County; *M. L. Ritchie*, Judge.

Action by Barnet Kuttes, also known as Barney Kuttes,

---

[1] *Lynch* v. *Jacobsen*, 55 Utah, 149, 184 Pac. 937.

against Francis G. Luke and another. Judgment for plaintiff, and defendants appeal.

AFFIRMED.

*Walton & Walton,* and *Chris Mathison,* all of Salt Lake City, for appellants.

*J. B. Wilkins* and *E. F. Allen,* both of Salt Lake City, for respondent.

WEBER, J.

Plaintiff brought this action in the district court of Salt Lake county against the Merchants' Protective Association, a corporation, and Francis G. Luke, its general manager. Judgment was entered in favor of plaintiff, and defendants appeal.

On or about the 18th day of March, 1918, plaintiff employed defendants to collect a debt of about $1,500 claimed to be due him from one E. Krieger, of 920 Lorena street, Los Angeles, Cal. Plaintiff agreed to pay defendants 25 per cent. of the amount collected, with "California and Utah attorney fees extra." At the time plaintiff employed defendants he paid to Francis G. Luke the sum of $22.50 as a "docket fee" in the matter of said collection. On April 29, 1918, plaintiff paid to defendants $41.90 on account of costs of suit that was to be brought on the claim, the receipt given plaintiff reading, "For a/c costs to sue Edw. Krieger." No suit was instituted. On August 19, 1918, defendant Luke wrote plaintiff as follows:

"Defendant is fighting the case with his attorneys and there will be nothing new until about the first week in September. I will let you know about that time pertaining to this matter."

This letter would indicate that a suit had been commenced. As a matter of fact, no suit had been instituted, and there is nothing in the record to show that any arrangements had been made for bringing suit. On September 17, 1918, plain-

tiff received another letter from defendants regarding his claim. In this letter they say:

"This man has employed an attorney, and it will be necessary for us to have a talk with you preparatory to bringing this matter on to trial in the near future. Are you going to be in town before long?"

Upon receipt of this letter plaintiff, on September 21, 1918, came to Salt Lake City from his home at Eureka, Utah, and on September 22, 1918, met Mr. Luke, at the latter's office, and paid him $20, the receipt for which reads, "On a/c attorney fees in Krieger case." The record does not show that any suit had been brought at that time, nor had any attorney's fee been incurred by defendants. On September 25, 1918, plaintiff remitted to the Merchants' Protective Association $55 and was given a receipt in that amount "for attorney's fees." The record still fails to show that any suit had been instituted up to that date. On September 30, 1918, in reply to an inquiry from plaintiff, defendants wrote to him:

"I will let you know just as soon as everything is ready to have you go down to Los Angeles or come into Salt Lake City."

Having thus obtained $139.40 of plaintiff's money, defendants temporarily ceased their arduous labors of collection until the following April, when the plaintiff came to Salt Lake City, called upon Mr. Luke, and paid him $37.20, receipt being given him "on account of fees in Krieger matter." On May 22, 1919, plaintiff again saw the general manager and paid defendants the sum of $300.00 on account of "fees and cost bond in E. Krieger case."

Having obtained $337.20 more of plaintiffs money, defendants again ceased their "get the money" campaign, and nothing further was done until October 4, 1919, when they wrote plaintiff saying:

"I may have something to tell you in the near future. This is in acknowledgment of your letter of November 27th. There is nothing to tell you of any consequence right now."

On October 18, 1919 the defendants wrote to plaintiff saying:

"I will let you know just as soon as I hear some more from Los Angeles. Have not had word since I wrote you last."

The total amount of money thus paid to defendants by plaintiff was $476.60 none of which has been returned.

Late in October, 1919, plaintiff evidently became both impatient and suspicious, and thereupon came to Salt Lake City, and employed an attorney to ascertain what defendants had done regarding his claim against Krieger. The attorney called upon defendants and was told that suit had been brought, but they did not know whether summons had been served or not; that it was in the nature of a friendly proceeding. When the general manager of the association was asked about the money which plaintiff had paid him in connection with the matter, he said he would send the attorney a statement. This statement was afterwards received from defendants. It states, among other things, that papers were served upon Krieger for dissolution of partnership and an accounting, and that certain stipulations were entered into. The statement is neither signed nor dated. It is also stated that plaintiff's deposition was sent to the referee, and that suit had been commenced by a firm of San Francisco lawyers. This report was received about two weeks after Mr. J. B. Wilkins, one of plaintiff's attorneys, had demanded an accounting and informed defendants that plaintiff wanted nothing further done by them in the matter. After plaintiff demanded the accounting, the claim was on November 17, 1919, forwarded to a law firm at San Francisco, with instructions to institute suit at Los Angeles, and a check of $10 was transmitted to the San Francisco lawyers on account of court costs.

The defendants offered no evidence, and the jury returned a verdict in favor of plaintiff for $376.

Appellants insist that no fraud was proved as alleged in the complaint. On the part of appellants, the record discloses a systematic course of chicanery, deceit, and fraud. On the representation that they were taking steps for collection and had brought suit, they continued collecting money from plaintiff for alleged court costs and attorney's fees.

Finally, after plaintiff had demanded an accounting and discharged defendants, they sent $10 to their San Francisco lawyers with instructions to institute suit. It is evident that this suit was instituted for the purpose of concealing the deceit in which they had been engaged. The principal defense urged is that the plaintiff misconceived his remedy and should have sued in equity for an accounting.

In the complaint all the material facts are fully stated. These were denied by the answer. The proof fully substantiated the allegations of the complaint. The 1, 2 appellants had respondent's money; he was entitled to have it returned. They had done nothing for him. Respondent's just cause of action cannot be defeated by refined technicalities. The complaint was sufficient to apprise appellants of what respondent demanded. If they had any right to retain respondent's money, or any part thereof, appellants could have pleaded their claim in the answer, and have made an accounting which they say should have been sought by plaintiff. In *Lynch* v. *Jacobsen*, 55 Utah, at page 149, 184 Pac. at page 937, Mr. Justice Frick makes an observation that is pertinent here:

"Moreover, this court has repeatedly held that under our Constitution all forms of action are abolished. That instrument explicitly directs, 'There shall be but one form of civil action and law and equity may be administered in the same action.' Why, then, longer quibble about what the form or nature of the action shall be?"

It is insisted that some of the court's instructions were erroneous. We think the charge of the court was fair, clear, and comprehensive and contained no reversible error.

The judgment is affirmed.

CORFMAN, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.